## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **Derrick Rodgers, William Owens,** | ) | |
| **Thaddeus Dumas, Frankie Edwards,** | ) | |
| **Zachary Ward, Dwayne Shelton**, **Jared** | ) | |
| **Williams, October Smith, Jonathan** | ) | |
| **Smith, Lance Cole, & DeAngelo Johnson** | ) | |
| Individually and on behalf of all others | ) | |
| similarly situated, | ) | **Case No.:      4:12-cv-01482-JCH** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Corrections Officer Dexter Brinson,** | ) | |
| **Corrections Officer Elvis Howard,** | ) | |
| Individually and in their official capacities; | ) | **JURY TRIAL REQUESTED** |
| **Corrections Officer Jeffries, Corrections** | ) | |
| **Officer Baker, Corrections Officer Woods** | ) | |
| Individually and in their official capacities; | ) | |
| **Eddie Roth, Dale Glass, Charles Bryson,** | ) | |
| **Eugene Stubblefield**, Individually and in | ) | |
| their official capacities; and the **City of** | ) | |
| **St. Louis,** | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, by

and through undersigned counsel, and for their First Amended Complaint allege the following:

*Parties*

1.     Plaintiff Derrick Rodgers (Rodgers) at all pertinent times herein was an adult male

incarcerated within the City of St. Louis.

2.     Plaintiff William Owens (Owens) at all pertinent times herein was an adult male

incarcerated within the City of St. Louis.

3.      Plaintiff Thaddeus Dumas (Dumas) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

4.      Plaintiff Frankie Edwards (Edwards) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

5.      Plaintiff Zachary Ward (Ward) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

6.      Plaintiff Dwayne Shelton (Shelton) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

7.      Plaintiff Jared Williams (Williams) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

8.      Plaintiff October Smith (Smith) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

9.      Plaintiff Jonathan Smith (Jonathan Smith) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

10.     Plaintiff Lance Cole (Cole) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

11.     Plaintiff DeAngelo Johnson (Johnson) at all pertinent times herein was an adult male incarcerated within the City of St. Louis.

12.     Defendant Dexter Brinson (Brinson) at all pertinent times herein was employed as a "corrections officer" for the City of St. Louis.  He is sued in his individual and official capacities.

13.     Defendant Elvis Howard (Howard) at all pertinent times herein was employed as a "corrections officer" for the City of St. Louis.  He is sued in his individual and official capacities.

14.     Defendant "Jeffries" at all pertinent times herein was employed as a "corrections officer" for the City of St. Louis.  He or she is sued in his or her individual and official capacities.

15.     Defendant "Baker" at all pertinent times herein was employed as a "corrections officer" for the City of St. Louis.  He or she is sued in his or her individual and official capacities.

16.     Defendant "Woods" at all pertinent times herein was employed as a "corrections officer" for the City of St. Louis.  He or she is sued in his or her individual and official capacities.

17.     Defendant Charles Bryson (Bryson) at all pertinent times herein was employed as the "Director of Public Safety" for the City of St. Louis.  Bryson is sued in his individual and official capacities.

18.     Defendant Eddie Roth (Roth) at all pertinent times herein was employed as the "Director of Public Safety" for the City of St. Louis.  Roth is sued in his individual and official capacities.  Roth is also sued pursuant to Fed.R.Civ.P. 25(d) as Bryson's successor in office.

19.     Defendant Eugene Stubblefield (Stubblefield) at all pertinent times herein was employed as the Commissioner of the Department of Corrections for the City of St. Louis.  Stubblefield is sued in his individual and official capacities.

20.     Defendant Dale Glass (Glass) at all pertinent times herein was employed as the Commissioner of the Department of Corrections for the City of St. Louis.  Stubblefield is sued in his individual and official capacities.  Glass is also sued pursuant to Fed.R.Civ.P. 25(d) as Stubblefield's successor in office.

21.   Defendant City of St. Louis at all pertinent times herein was a municipality of the State of Missouri.

*Jurisdiction & Venue*

22.   This Court has subject-matter jurisdiction in accordance with 28 U.S.C. §§ 1331 and/or 1343 because plaintiffs seek to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

23.   Venue is proper in this judicial district pursuant to 28 U.S.C.§1391 because all of the actions or omissions complained of occurred herein.

*Common Factual Allegations*

24.    All actions or omissions of defendants were made while acting under color of law;

25.    All actions or omissions of defendants were made in the course and scope of their employment with the City of St. Louis;

26.    Upon information and belief, the City of St. Louis purchased liability insurance to cover the types of actions or omissions alleged herein;

27.    The City of St. Louis has delegated final policymaking authority to the Commissioner of the Department of Corrections regarding safekeeping of plaintiff class members.

28.    The City of St. Louis has delegated final policymaking authority to the Director of the Department of Public Safety regarding safekeeping of plaintiff class members.

29.    Defendants, at all times herein, were responsible for the "safekeeping" of plaintiff class members.

30.    Defendants' use of sadistic force against plaintiff class members was unlawful.

31.    Defendants' use of prisoners as surrogates to inflict sadistic force against other prisoners was unlawful.

32.    Defendants were obligated to protect prisoners against physical harm from other prisoners when any defendant knew or had reason to suspect imminent harm to another prisoner.

33.    Defendants were prohibited from encouraging, facilitating, and/or rewarding the use of sadistic force by one prisoner against another prisoner.

34.    Defendants were prohibited from using or aiding in the use of sadistic force to "teach a lesson" or otherwise discipline to any prisoner.

35.     All of the actions or omissions of the defendants resulting in the sadistic use of force against any plaintiff class member was done in accordance with the customs and policies of the City of St. Louis.

36.     All of the actions or omissions of the defendants resulting in the sadistic use of force against any plaintiff class member resulted from a lack of adequate training or supervision by the Commissioner of the Department of Corrections and/or the Director of the Department of Public Safety.

37.     Prior to any of the acts of the sadistic use of force against plaintiff class members alleged herein Stubblefield and/or Bryson knew or should have known of similar prior instances of such force.

38.     Stubblefield and/or Bryson knew or should have known of prior instances of the sadistic use of force against plaintiff class members by reviewing (i) internal grievances filed by corrections officers or other department officials, (ii) formal allegations of excessive force by prisoners filed more than five years ago, (iii) "Suffering in Silence: Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, (iv) prior civil actions against the City of St. Louis, (v) internal findings of the City of St. Louis Board of Alderman or special investigative committees, (vi) testimony of current and former department officials at hearings held by the City of St. Louis Board of Alderman, (vii) guilty pleas of former department officials, (viii) "Still Suffering in Silence: Continuing Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, and/or (ix) deposition testimony of current and former department officials.

39.     To the extent that Stubblefield and/or Bryson knew or should have known of the prior use of sadistic force against plaintiff class members, they ratified such actions by failing to enact adequate written policies or to consistently enforce appropriate discipline against the corrections officers in those prior instances.

40.     The instances of reported sadistic use of force against plaintiff class members are so widespread that the failure to enact adequate policies or to enforce appropriate discipline effected municipal custom.

41.     Plaintiffs have suffered injury as a result of the acts or omissions alleged herein including, but not limited to (untreated) physical injuries, emotional distress and anguish, sleeplessness, loss of appetite, weight loss, loss of common privileges, fear of reprisals, and continuing threats by corrections officers.

42.     Defendants' actions and/or omissions reflect a callous disregard of plaintiff class members' right to be from the sadistic infliction of force and warrant the imposition of exemplary damages to punish and deter similar unlawful actions or omissions in the future.

43.     Plaintiffs have incurred and shall continue to incur reasonable attorney's fees to prosecute this civil action.

*General Class Action Allegations*

44.     Plaintiffs bring this civil action on their own and on behalf of all similarly situated prisoners under 42 U.S.C. §§ 1983 and 1988.  The class consists of all persons who have suffered the infliction of sadistic force either at the hands of or at the encouragement of City of St. Louis corrections officers.

45.     The Plaintiff Class satisfies all of the prerequisites stated in Fed.R.Civ.P. 23(a):

(a) The class is so numerous that joinder of all members would be impractical. Upon information and belief, members of the class number in the hundreds.

(b) There are common questions of law or fact, such as whether the offending officers encouraged, facilitated, and/or rewarded certain prisoners for inflicting physical harm on certain other prisoners.

(c) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class; and

(d) The representative plaintiffs will fairly and adequately protect the interests of the class. Plaintiff has no interests antagonistic to the members of the proposed class. Plaintiff's counsel has experience litigating assault and battery claims;

46. Moreover, the questions of law or fact common to all members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

(a) Defendants' computer or business records will enable Plaintiffs to readily identify class members and to establish liability and damages;

(b) Liability and damages can be established for Plaintiffs and the class with the same common proofs;

(c) Damages are provided for in §§ 1983 and 1988; are the same for all class members; and can be calculated in the same or similar manner;

(d) A class action will result in an orderly and expeditious administration of claims, and it will foster judicial economy, and a more judicious exertion of effort and expense;

(e) A class action will contribute to uniformity of decisions concerning defendants' practices;

(f) As a practical matter, the claims of the class are likely to go unaddressed absent class certification;

47.     Plaintiffs on behalf of themselves and the members of the class respectfully pray for this Honorable Court to:   accept jurisdiction over this cause; certify the class and appoint Plaintiffs as the representatives of the class; and appoint counsel for Plaintiffs as counsel for the class.

*Common Class Action Allegations*

48.     In all incidents correction officials intentionally used sadistic force on prisoners, or used prisoners as surrogates to inflict sadistic force on other prisoners.

49.     Defendants were obligated to protect prisoners against physical harm from other prisoners when any defendant knew or had reason to suspect imminent harm to another prisoner.

50.     Defendants Baker and Woods were made aware of the use of sadistic force at MSI, observed the unauthorized transportation of inmates, and observed several assaults themselves.

51.     Despite having such notice, Defendants Baker and Woods failed to take any action to abate the risk of imminent harm to the victims, and failed to provide medical attention to the victims.

52.     In many of theses instances (five of which are summarized herein), corrections officers deliberately removed a prisoner from a cell and placing him in the cell of another, knowing of an imminent harm.

**1.  DERRICK RODGERS**

53.     At all times relevant, Plaintiff, Derrick Rodgers, was incarcerated at MSI for case number

1122-CR06918-01.

54.   On or about May 24, 2012, at 11:00 PM officers Brinson and Howard removed inmate Dumas from cell 12 of Unit 4 for the purpose of using sadistic force against inmate Rodgers.

55.   On or about May 25, 2012 at 1:00 AM officers Brinson and Howard removed inmate Dumas from cell 12 of Unit 4 for the purpose of using sadistic force against Rodgers.

56.   Each time Brinson and Howard escorted Dumas to the second level to cell 50--inhabited by Rodgers.

57.   Brinson and Howard opened or caused to be opened Rodgers' cell door and placed Dumas in the cell.

58.   Prior to placing Dumas in Rodgers' cell, Brinson and Howard advised Dumas that if he did not attack plaintiff Rodgers, they would have him (Dumas) attacked by a third inmate in addition to taking away Dumas' access to the commissary.

59.   Under Brinson and Howard's order(s), Dumas repeatedly struck Rodgers about the face and chest.

60.   At all pertinent times herein, Brinson and Howard remained outside the cell door, watching the assault as if a spectator sport.

61.   When Dumas has completed his misguided mission, Brinson and Howard opened the door to allow Dumas to exit Rodgers' cell and returned him to cell 12.

62.   Brinson, Howard, and Dumas caused Rodgers to suffer multiple contusions, bruises and blackened eyes as a result of the sanctioned assault.

63.     Despite knowledge of Rodger's injuries, Brinson and Howard refused or failed to summon medical aid for Rodgers in accordance with published City of St. Louis regulations.

64.     Upon information and belief, the entire transaction was captured on video surveillance;

65.     Upon information and belief, neither Brinson nor Howard could open the cell doors without the assistance of a third officer;

66.     Defendants Howard and Brinson have been charged, and are being prosecuted by the St. Louis City Circuit Attorney's Office for Burglary, Assault, and Obstructing Government Operations for their aforementioned actions and inactions under cause numbers 1222-CR03462 and 1222-CR03464, respectively.

## 2.  WILLIAM OWENS

67.     At all times relevant, Plaintiff, William Owens, was incarcerated at MSI for case number 1122-CR07328-01.

68.     On or about May 12, 2012, and *while on suicide watch*, Plaintiff William Owens observed officer Jeffries physically assault inmate Zachary Ward (*also known as Karif McCreight*).

69.     Upon viewing this incident Owens stated to officer Jeffries that he would be informing his (Jeffries') supervisor of the incident.

70.     Jeffries then threatened to have another inmate attack Owens to force him (Owens) to remain silent as to what he had observed.

71.     Approximately one hour later officer Jeffries and officer Howard escorted an unnamed inmate from cell 30 to cell 12--inhabited by Owens.

72. Upon information and belief, prior to placing the unnamed inmate in Owens' cell, Jeffries and Howard instructed the inmate to attack Owens, and that if he did not they would take retaliatory action against the unnamed inmate.

73. Jeffries and Howard opened or caused to be opened Owens' cell door and placed the unnamed inmate in the cell.

74. Under Jeffries and Howard's order(s), the unnamed inmate viciously struck Owens for several minutes.

75. At all pertinent times herein, Jeffries and Howard remained outside the cell door, watching the assault as if a spectator sport.

76. When the unnamed inmate had completed his misguided mission, Jeffries and Howard opened the door to allow the unnamed inmate to exit Owens' cell.

77. Jeffries, Howard, and the unnamed inmate caused Owens to suffer multiple contusions and bruises to his face, neck and back as a result of the sanctioned assault.

78. Despite knowledge of Owens' injuries, Jeffries and Howard refused or failed to summon medical aid for Owens in accordance with published City of St. Louis regulations.

### 3.  THADDEUS DUMAS

79. At all times relevant, Plaintiff, Thaddeus Dumas, was incarcerated at MSI for case number 1122-CR06831.

80. On multiple occasions Dumas was subjected to sadistic force by officers Howard, Brinson, and Jeffries.

81. On several occasions, under threat and duress Dumas was used as a surrogate by officers Howard, Brinson and/or Jeffries to inflict sadistic force on other prisoners at MSI (including but not limited to the aforementioned incident with Rodgers).

82.　As a result of Dumas informing officials of the aforementioned incidents officers Howard and Brinson are being criminal prosecuted by the St. Louis City Circuit Attorney's Office under cause numbers 1222-CR03462 and 1222-CR03464, respectively.

83.　Upon information and belief, as a result of Dumas' cooperation with officials, officer Howard has attempted to bribe multiple inmates to attack Dumas.

84.　As further result of his cooperation Dumas has since been threatened with sadistic force by corrections officers at MSI and has been refused meals for "snitching".

85.　Dumas has been has been warned by inmates that the corrections officers have "put a price on his head" for cooperating with investigating officials.

## 4.  FRANKIE EDWARDS

86.　At all times relevant, Plaintiff, Frankie Edwards, was incarcerated at MSI for case number 1122-CR01365-01.

87.　On multiple occasions officers Howard and Brinson have escorted inmates from their cells to the cell inhabited by Edwards for the purpose of inflicting sadistic force on Edwards.

88.　Upon information and belief, prior each incident inmates were instructed to attack Edwards, and that if he did not they (Brinson and Howard) would take retaliatory action against the unnamed inmates.

89.　On each occasion officer Howard or Brinson would open, or caused to be opened, Edwards' cell door and placed the unnamed inmate(s) in the cell occupied by Edwards.

90.　Under Howard and Brinson's order(s), Edwards was viciously attacked by inmates.

91.　At all pertinent times herein, Howard and Brinson remained outside the cell door, watching the assault as if a spectator sport.

13

92.     Howard, Brinson, and the unnamed inmate(s) caused Edwards to suffer multiple contusions and a bruises as a result of the sanctioned assaults.

93.     Despite knowledge of Edwards' injuries, Howard and Brinson refused or failed to summon medical aid for Owens in accordance with published City of St. Louis regulations

## 5.  DWAYNE SHELTON

94.     At all times relevant, Plaintiff, Dwayne Shelton, was incarcerated at MSI for case number 0922-CR00551-01.

95.     On several occasions officers Howard and Brinson have escorted inmates from their cells to the cell inhabited by Shelton for the purpose of inflicting sadistic force on Shelton.

96.     Upon information and belief, prior each incident inmates were instructed to attack Shelton, and that if he did not they (Brinson and Howard) would take retaliatory action against the unnamed inmates.

97.     On each occasion officer Howard or Brinson would open, or caused to be opened, Shelton's cell door and placed the unnamed inmate(s) in the cell occupied by Shelton.

98.     Under Howard and Brinson's order(s), Shelton was viciously attacked by inmates.

99.     At all pertinent times herein, Howard and Brinson remained outside the cell door, watching the assault as if a spectator sport.

100.    Howard, Brinson, and the unnamed inmate(s) caused Shelton to suffer multiple physical injuries as a result of the sanctioned assaults.

101.    Despite knowledge of Shelton's injuries, Howard and Brinson refused or failed to summon medical aid for Owens in accordance with published City of St. Louis regulations

102.   The aforementioned incidents are but a handful of examples where correctional officers, for their amusement and for the purpose of inflicting sadistic force upon inmates, created a "gladiator sport" environment.

103.   Evidence, including but not limited to video surveillance and eyewitness testimony, of Defendants' deliberate indifference and neglect to prisoner health and safety is copious and overwhelming.

104.   In many other instances (seven of which are summarized herein), corrections officers directly and intentionally inflicted sadistic force upon inmates, and/or negligently allowed inmates to be subjected to infliction of sadistic force for the purposes of amusement, punishment, retaliation, or other purposes.

## 1.  JARED WILLIAMS

105.   At all times relevant, Plaintiff, Jared Williams, was incarcerated at MSI for case number 1022-CR03759-01.

106.   On several occasions, Williams, was assaulted by corrections officers at MSI.

107.   On at least one occasion, Williams was removed from his cell by a corrections officer at MSI, and taken to another inmates cell for the purpose of engaging in the previously described "gladiator styled combat".

108.   Williams refused to participate in the "gladiator styled combat".

109.   As a result of his refusal to participate a corrections officer physically assaulted Williams.

110.   As a result of being assaulted by the corrections officer, Williams suffered severe injury to his jaw, as well as a concussion.

**2.  ZACHARY WARD**

111.    At all times relevant, Plaintiff, Zachary Ward, *also known as Karif McCreight*, was

112.    incarcerated at MSI for case number 1122-CR01606-01 and case number 1122-CR07377.

113.    On or about May 12, 2012, *while on suicide watch*, Ward was physically assaulted by

        officer Jeffries.

114.    Upon information and belief, an unnamed corrections officer opened the cell to allow

        Jeffries entry into Ward's cell for the purposes of assaulting Ward.

115.    Upon entry Jeffries repeatedly choked and struck a naked and defenseless Ward.

116.    As a result of being assaulted by officer Jeffries, Ward suffered severe injury to face,

        chest, and back.

**3.  OCTOBER SMITH**

117.    At all times relevant, Plaintiff, October Smith was incarcerated at the St. Louis City

118.    Justice Center and MSI, originally for case number 1022-CR03173.

119.    From December 2010 to October 2011, while incarcerated at the Justice Center, Plaintiff

        Smith suffered multiple assaults at the hands of corrections officers, including

        specifically one occasion where Smith was beaten with a corrections officer's radio and

        choked while restrained to a chair.

120.    As result of the sadistic force inflicted by the corrections officer Smith suffered an

        abrasion to his chin requiring stitches, and injury to his left ear, left eye, and his head.

121.    As a result of the injuries received Smith was sent to the infirmary for treatment.

122.    The attending nurse kept Smith in the infirmary in an attempt to protect Smith from

        further incident at the hands of corrections officers.

123.   Smith was subsequently told by corrections officers that if he reported the incident he would suffer additional beatings.

124.   From October 2011 to present Smith has been incarcerated at MSI.

125.   During this time Smith has suffered multiple physical abuses at the hands of corrections officers.

126.   On one such occasion Smith was copiously sprayed in the face with numerous bottles mace while restrained to a chair, by a correction officer ranked captain employed at MSI.

127.   Smith has been refused showers, refused teeth cleaning.

128.   Smith has filed multiple "Informal Resolution Reports" as a result of the use of sadistic force and inhumane treatment.

## 4.  ERIC GRAY

129.   At all times relevant, Eric Gray was incarcerated at MSI and the Justice Center for case number 0922-CR03032-01.

130.   While incarcerated at MSI Eric Gray was placed inside a closet with other inmates and pepper sprayed by corrections officers as a form of discipline for fighting with another inmate.

131.   Gray attempted to file several complaints and grievances as a result of this use of sadistic force and inhumane treatment.

132.   Mr. Gray was subsequently transported and housed at the Justice Center after escaping from MSI.

133.   In September 2010, while incarcerated at the Justice Center, Gray suffered physical attacks by corrections officers including, but not limited to having his face slammed into glass.

134.    As a result of having his face slammed into glass Gray suffered abrasions over his eye and requiring stitches.

135.    On a separate occasion, while incarcerated at the Justice Center, a corrections officer gave Gray a set of handcuffs and instructed Gray to assault another inmate, Jonathan Smith.  Gray refused.

136.    As a result of his refusal Gray was assaulted by the corrections officer.

## 5.  JONATHAN SMITH

137.    At all times relevant, Jonathan Smith was incarcerated at the St. Louis City Justice Center, between August 29, 2010 thru November 29, 2011.

138.    While incarcerated at the Justice Center, Smith was subjected to at least six separate attacks by corrections officers, or by inmates as surrogates for the corrections officers, specifically including Lieutenant McMorris and Lieutenant Brock of the Justice Center.

139.    More specifically, during and about March 22, 2011, Lieutenants Brock and/or McMorris released inmate October Smith, while the facility was on lockdown, for the purposes of attacking Jonathan Smith, and allowed Smith to be thrown from a second floor balcony to the floor by October Smith.

140.    Further, during and about March 22, 2011, Lieutenants Brock and/or McMorris released inmate Elex Murphy from his cell, while the facility was on lock down and Jonathan Smith was in protective custody for the purposes of allowing Murphy to attack Smith.

141.    On a separate occasion, while incarcerated at the Justice Center, a corrections officer gave inmate Eric Gray a set of handcuffs and instructed Gray to assault Jonathan Smith.

142.    As a result of the multiple instances of sadistic force Smith was subjected to, Jonathan Smith suffered multiple injuries, including but not limited to: bruises to his body, knots to his head, and the shoving of an item into Smith's rectum.

143.    Defendant Bryson was notified of the aforementioned incident(s).

144.    As a result Smith was transferred to MSI.

145.    Despite having knowledge of the incident(s), no disciplinary actions were taken against the corrections officers that facilitated or allowed the sadistic use of force.

146.    On or about March 2011 Smith was transferred back to the Justice Center.

147.    Smith was placed on suicide watch and under protective custody in the Justice Center.

148.    While on suicide watch corrections officer Barnes allowed Smith out of his cell "for recreation".

149.    While out of his cell Smith was attacked by inmates October Smith and 'Kentrell Jones", at the direction of Lieutenant McMorris and corrections officer Barnes.

150.    Smith filed several formal complaints and grievances as a result of these uses of sadistic force and inhumane treatment.

151.    Defendants denied Jonathan Smith access to final grievance procedures thru actions or omissions.

## 6.  LANCE COLE

152.    At all times relevant, Lance Cole was incarcerated at MSI and the St. Louis City Justice Center.

153.    Plaintiff Cole filed a civil suit against the City of St. Louis for his inhumane treatment at the hands of the correctional officers.

154.	On or about March 19, 2004 Cole was threatened by corrections officers that if he did not dismiss his civil suit he would be jailed for life, and was transferred from the Justice Center to MSI.

155.	On or about March 22, 2004 Cole was placed in Administration Segregation.

156.	Upon information and belief such placed was for the purposes of allowing conduct to occur that would not be witnessed by the general population.

157.	As a result of being placed in Administration Segregation Cole was subjected to repeated used of sadistic force by the corrections officer and by inmates at the direction of the corrections officers.

158.	More specifically, on or about June 10, 2004 a MSI corrections officer opened Cole's cell door, allowing inmate Deandre Pie to enter his cell, and at the direction of the corrections officer Cole was assaulted by Pie.

159.	As a result of the use of sadistic force Cole suffered multiple injuries, including but not limited to: bruises to his body and a boil, which became infected.

160.	Cole was subsequently denied medical treatment, until such later time that Corrections Officer Moore and Lieutenant Lense observed bloody linens in Cole's cell.

161.	Cole filed several complaints and grievances as a result of the use of sadistic force and inhumane treatment he had been subjected to.

## 7.  DEANGELO JOHNSON

162.	At all times relevant, DeAngelo Johnson was incarcerated at both MSI and the St. Louis City Justice Center.

163.	While incarcerated Johnson has been assaulted by correction officers, and by inmates at the direction of and as surrogates for correction officers.

164.    As a result of the use of sadistic force Johnson suffered multiple injuries, including but not limited to: bruises to his body and a boil, which became infected.

165.    Johnson has filed numerous complaints and grievances for his inhumane treatment and the use of sadistic force.

166.    In retaliation and in violation of his 6th Amendment rights, defendants withheld Johnson's prescribed medications, causing him to act/become psychotic, subsequently causing Johnson to incur additional criminal charges.

167.    The aforementioned incidents are but a handful of examples where correctional officers, for their own amusement, for purposes of punishment, or for purposes of retaliation intentionally and/or negligently allowed inmates to be subjected to infliction of sadistic force.

168.    Evidence, including but not limited to video surveillance, eyewitness testimony, and documentation of Defendants' deliberate indifference and neglect to prisoner health and safety is copious and overwhelming.

*Jury Demand*

169.    Plaintiffs hereby demand a jury trial.

## Count I
## Conspiracy to Commit Sadistic Infliction of Force

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Conspiracy to Commit Sadistic Infliction of Force, pursuant to §§ 1983 and 1988 states the following:

170. On each aforementioned occasion corrections officer escorted inmates from one cell to another, for the purpose of inflicting sadistic force upon another inmate.

171. Upon information and belief, none of the corrections officer transporting inmates (at a time Brinson, Howard and/or Jeffries) could open the cell doors without the assistance of another (third) officer.

172. Upon information and belief, the third officer observed the transactions and failed to report same to Glass or Roth because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

173. Upon information and belief, a third officer facilitated or aided Brinson, Howard, and/or Jeffries in the commission of the sadistic physical assaults against inmates.

174. Defendants Baker and Woods were aware of the use of sadistic force by Brinson, Howard, and Jeffries.

175. Baker and Woods observed the unauthorized transportation of inmates for the purpose of inflicting sadistic force upon another inmate and failed to report same to Glass or Roth because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

176. Baker and Woods observed the transactions and failed to report it to Glass or Roth because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

177. Upon information and belief, Baker and Woods facilitated or aided Brinson, Howard, and/or Jeffries in the commission of the sadistic physical assaults against inmates.

178. Rodgers, Owens, Dumas, Edwards, and Shelton reported the incidents to other corrections officer and requested formal grievance proceedings.

179. Rodgers, Owens, and Dumas reported the incidents during the course of investigation by police officers.

180. Neither Bryson, Roth, Stubblefield, nor Glass, took any administrative measures to adequately address Rodger's, Owens', or Dumas' individual claims or to repair the harm or risk of future harm.

181. Upon information and belief, Bryson, Roth, Stubblefield and/or Glass knew or should have known that Brinson, Howard, or Jeffries had previously used inmates to inflict sadistic force upon inmates;

182. Upon information and belief, Bryson, Roth, Stubblefield and/or Glass failed to terminate Brinson, Howard, or Jeffries prior to criminal charges being filed against Brinson and/or Howard.

183. During the interim, neither Bryson, Roth, Stubblefield nor Glass took precautions to prevent further harassment or intimidation to Rodgers, Owens, Dumas, Edwards, or Shelton.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Bryson, Roth, Stubblefield, Glass, and/or the City of St. Louis in the form of:

A. An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B. A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C.  An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention following the infliction of sadistic force upon any inmate by any officer or other inmate;

F.  Compensatory damages;

G.  Exemplary damages in excess of $150,000;

H.  Reasonable attorney's fees and costs; and

I.  Any other relief this Court deems necessary and appropriate.

<u>**Count II**</u>
<u>**Sadistic Infliction of Force**</u>

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Sadistic Infliction of Force, pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments of the United States Constitution, states the following:

184.   On each aforementioned occasion corrections officers intentionally used sadistic force against plaintiff class members, or unlawfully used prisoners as surrogates to inflict sadistic force against other prisoners.

185.   Plaintiffs did not have the capacity to consent to the sadistic force.

186.   Defendants were obligated to protect prisoners from violence at the hands of other prisoners.

187.   Defendants were obligated to prohibit to imposition of cruel and unusual punishment towards prisoners.

188.   Defendants unlawfully violated the rights of the plaintiff class when they undertook an act to place a prisoner at substantial risk of serious harm.

189.   Defendants unlawfully violated the rights of the plaintiff class when they failed to act to abate the risk of serious harm to the plaintiff class.

190.   Plaintiffs reported the incidents to other corrections officer and requested formal grievance proceedings.

191.   Defendants felt that they could sadistically assault prisoners for no legitimate purpose because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

192.   Defendants felt that they could employ sadistic force towards prisoners to "teach a lesson" because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

193.   Neither Bryson, Roth, Stubblefield, nor Glass took any administrative measures to adequately address plaintiff's individual claims or to repair the harm or risk of future harm.

194.   The failure to take any administrative measures to adequately address plaintiff's individual claims or to repair the harm or risk of future harm constitutes a ratification of the unconstitutional actions of corrections officers.

195. This pattern of unconstitutional conduct is so widespread and persistent as to have been tacitly approved and adopted as policy.

196. During the interim, neither Bryson, Roth, Stubblefield nor Glass took precautions to prevent further harassment or intimidation to plaintiffs.

197. As a direct and proximate result of the sadistic force inflicted upon plaintiff class members, plaintiffs have been seriously, permanently and painfully injured.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Bryson, Roth, Stubblefield, Glass, and/or the City of St. Louis in the form of:

A. An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B. A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C. An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D. An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E. An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention

following the infliction of sadistic force upon any inmate by any officer or other inmate;

F.   Compensatory damages;

G.   Exemplary damages in excess of $150,000;

H.   Reasonable attorney's fees and costs; and

I.   Any other relief this Court deems necessary and appropriate.

### Count III
### Failure to Train, Supervise, or Implement Sufficient Policies

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Failure to Train, Supervise, or Implement Sufficient Policies, pursuant to 42 U.S.C. § 1983 states the following:

198.   Corrections Officers for the City of St. Louis Justice Center and MSI are responsible for the supervision, safety and security of inmates within said facilities.

199.   Specifically their duties are to:  maintain order, prevent disturbances, prevent assaults, settle disputes between inmates, enforce discipline, prevent escapes, and are responsible for the overall care, custody, and control of individuals who have been arrested, awaiting trial, or have been convicted of a crime and sentenced to serve time within said facilities.

200.   The use of sadistic force against plaintiff class members by corrections officers, whether for no legitimate purpose, or to "teach a lesson" is unlawful.

201.   The facilitating of a "gladiator style" environment for the purpose of amusement is unlawful.

202.   The corrections officers at the City of St. Louis Justice Center and MSI, specifically including, but not limited to the named Defendants in this present cause have failed in

their duties by the commission of unconstitutional acts and/or failure to abate or remedy such unconstitutional acts.

203. In light of the duties assigned to the City of St. Louis corrections officers the need for more or different training and proper supervision has been so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the aforementioned Defendants and policymakers of the City of St. Louis can reasonably be said to have been deliberately indifferent to the need.

204. The prior patterns of unconstitutional conduct are so persistent and widespread as to have been adopted as policy and custom and therefore have the effect and force of law within the City of St. Louis corrections system.

205. The City of St. Louis has delegated final policymaking authority to the Commissioner of the Department of Corrections regarding safekeeping of plaintiff class members.

206. The City of St. Louis has delegated final policymaking authority to the Director of the Department of Public Safety regarding safekeeping of plaintiff class members.

207. Defendants Bryson, Roth, Stubblefield, and/or Glass knew or should have known the procedures and policies of the Justice Center and MSI were inadequate and likely to result in a violation of constitutional rights by reviewing (i) internal grievances filed by corrections officers or other department officials, (ii) formal allegations of excessive force by prisoners filed more than five years ago, (iii) "Suffering in Silence: Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, (iv) prior civil actions against the City of St. Louis, (v) internal findings of the City of St. Louis Board of Alderman or special investigative committees, (vi) testimony of current and former department

officials at hearings held by the City of St. Louis Board of Alderman, (vii) guilty pleas of former department officials, (viii) "Still Suffering in Silence: Continuing Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, and/or (ix) deposition testimony of current and former department officials.

208.   As a direct result of Defendants deliberate indifference to the need of adequate training, supervision, or establishing adequate policies regarding hiring and training, and/or more or different training, the constitutional rights of the plaintiff class have been violated.

209.   As a direct and proximate result of Defendants deliberate indifference to the aforementioned need members of the plaintiff class have suffered sadistic use of force, deprivation of meals, deprivation of medical treatment, and other various injuries.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Glass, Roth, and/or the City of St. Louis in the form of:

A.   An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B.   A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C.   An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D. An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E. An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention following the infliction of sadistic force upon any inmate by any officer or other inmate;

F. Compensatory damages;

G. Exemplary damages in excess of $150,000;

H. Reasonable attorney's fees and costs; and

I. Any other relief this Court deems necessary and appropriate.

## Count IV
## Conspiracy to Violate the Eighth and Fourteenth Amendments

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Conspiracy to Violate the Eighth and Fourteenth Amendment, pursuant to §§ 1983 and 1985 states the following:

210. On each occasion plaintiff class members reported the incidents to other corrections officer, including those of higher rank (i.e. sergeants and captains).

211. On each occasion plaintiff class members attempted submission of "Informal Resolution Reports" (and like documentation).

212. Upon information and belief plaintiff class members requested formal grievance proceedings for the sadistic infliction of force by corrections officers.

213. Defendants denied plaintiff class members access to final grievance procedures thru actions or omissions.

214.  Upon information and belief, Defendants have employed a policy of suppressing formal grievance procedures filed by prisoners.

215.  Plaintiff class members were denied final grievance procedures for the purpose of depriving plaintiff class members of their constitutional rights to liberty, personal security and well-being, and from cruel and unusual punishment.

216.  Defendants selected to employ sadistic force against prisoners because of its adverse effects upon prisoners in MSI and the Justice Center, in that plaintiff class members are incarcerated without access to means of addressing grievances beyond those procedures granted to them by their tormentors.

217.  Defendants felt that they could sadistically assault prisoners for no legitimate purpose, or for the purpose of discipline, because such transactions were commonplace in the City of St. Louis and had not been severely punished in prior instances.

218.  Neither Bryson, Roth, Stubblefield, nor Glass took any administrative measures to adequately address the individual claims of the plaintiff class members, or to repair the harm or risk of future harm.

219.  Upon information and belief, Bryson, Roth, Stubblefield, and/or Glass failed to investigate the individual claims of the plaintiff class members, or to repair the harm or risk of future harm.

220.  Upon information and belief, Bryson, Roth, Stubblefield, and/or Glass conspired to conceal the individual claims of the plaintiff class members.

221.  Upon information and belief, Bryson, Roth, Stubblefield, and/or Glass opted to cast a "blind eye" to the widespread pattern of sadistic use of force and failed to take remedial action, thereby ratifying the action and omissions of corrections officers.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Bryson, Roth, Stubblefield, Glass, and/or the City of St. Louis in the form of:

A.  An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B.  A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C.  An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention following the infliction of sadistic force upon any inmate by any officer or other inmate;

F.  Compensatory damages;

G.  Exemplary damages in excess of $150,000;

H.  Reasonable attorney's fees and costs; and

I.  Any other relief this Court deems necessary and appropriate.

## Count V
## Negligence Per Se

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Conspiracy to Violate the Eighth and Fourteenth Amendment, pursuant to Missouri Revised Statute § 544.240 states the following:

222.   Pursuant to Missouri Revised Statute each and every jailer of every county "…through which such prisoner may be taken is required to receive and safely keep such prisoner in the jail of which he has charge…" § 544.240 RSMo.

223.   Missouri Revised Statute § 544.240 is intended to protect prisoners of every county within the State of Missouri.

224.   Corrections officers are obligated to protect prisoners against physical harm from other prisoners.

225.   Defendants knew or had reason to suspect imminent harm to another prisoner by the commission of one or more of the aforementioned acts and/or the failure to abate such acts.

226.   A reasonably prudent person would have anticipated such dangers and provided against it.

227.   Defendants have negligently failed to receive and safely keep prisoners.

228.   Upon information and belief, Bryson, Roth, Stubblefield, and/or Glass have failed to implement any policies prohibiting the use of sadistic force against inmates.

229.   Upon information and belief, Bryson, Roth, Stubblefield, and/or Glass knew or should have known of the corrections officers negligent failure to receive and safely keep prisoners.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Bryson, Roth, Stubblefield, Glass, and/or the City of St. Louis in the form of:

A.  An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B.  A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C.  An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention following the infliction of sadistic force upon any inmate by any officer or other inmate;

F.  Compensatory damages;

G.  Exemplary damages in excess of $150,000;

H.  Reasonable attorney's fees and costs; and

I.  Any other relief this Court deems necessary and appropriate.

## Count VI
## Negligent Supervision

Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully restated herein and for his complaint for Conspiracy to Violate the Eighth and Fourteenth Amendment, pursuant to Restatement (Second) of Torts § 317.

230.  At all times relevant, Defendants Bryson, Roth, Stubblefield, and Glass, in their official capacities, knew or had reason to know that they had the right to control Defendants Brinson, Howard, Jeffries, Baker, Woods, and other corrections officers within the St. Louis Justice Center and MSI.

231.  At all times relevant, Brinson, Howard, Jeffries, Baker, and Woods were within the St. Louis City Justice Center and MSI facilities.

232.  Bryson, Roth, Stubblefield, and Glass had a duty to prevent Brinson, Howard, Jeffries, Baker, Woods and other corrections officers from inflicting or allowing the inflictions of sadistic force upon prisoners.

233.  The safety, security, and movement of every person within the St. Louis City Justice Center and MSI are of the utmost importance to the Department of Corrections and the Department of Public Safety.

234.  Bryson, Roth, Stubblefield, and Glass knew or should have known of the necessity and opportunity for exercising control of Defendants Brinson, Howard, Jeffries, Baker, Woods, and other corrections officers.

235.  On each occasion plaintiff class members reported the incidents to other corrections officer, including those of higher rank (i.e. sergeants and captains).

236.  On each occasion plaintiff class members attempted submission of "Informal Resolution Reports" (and like documentation).

237.    Defendants Bryson, Roth, Stubblefield, and Glass were negligent for one or more of the following reasons:

238.    Bryson, Roth, Stubblefield, and Glass retained Brinson, Howard, Jeffries, Baker, and/or Woods in their employment when they knew or should have known Brinson, Howard, Jeffries, Baker, and/or Woods were inflicting or allowing the infliction of sadistic force on prisoners.

239.    Bryson, Roth, Stubblefield, and Glass were negligent in their supervision of Defendants Brinson, Howard, Jeffries, Baker, and Woods in that they allowed their corrections officers to inflict or allow the infliction of sadistic force on prisoners.

240.    Bryson, Roth, Stubblefield, and Glass were negligent in their supervision of their corrections officers so as to prevent them from intentionally harming the plaintiff class members.

241.    Bryson, Roth, Stubblefield, and Glass negligently failed to supervise their employees so as to prevent them (corrections officers) from conducting themselves as to create an unreasonable risk of bodily harm to the plaintiff class members.

242.    Bryson, Roth, Stubblefield, and/or Glass have negligently failed to implement any policies prohibiting the use of sadistic force against inmates.

243.    Bryson, Roth, Stubblefield, and Glass knew or should have known of prior instances of the sadistic use of force against plaintiff class members by reviewing (i) internal grievances filed by corrections officers or other department officials, (ii) formal allegations of excessive force by prisoners filed more than five years ago, (iii) "Suffering in Silence: Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, (iv) prior civil

actions against the City of St. Louis, (v) internal findings of the City of St. Louis Board of Alderman or special investigative committees, (vi) testimony of current and former department officials at hearings held by the City of St. Louis Board of Alderman, (vii) guilty pleas of former department officials, (viii) "Still Suffering in Silence: Continuing Human Rights Abuses in St. Louis Correctional Centers" conducted and prepared by the American Civil Liberties Union of Eastern Missouri, and/or (ix) deposition testimony of current and former department officials.

244.   As a direct and proximate result of the aforementioned Defendants failure to properly supervise their corrections officers, the plaintiff class members' constitutional rights have been violated, including but not limited to Plaintiffs rights to liberty, personal security, protection, and well-being under the Fourth, Fifth, Eighth and Fourteenth amendments to the Constitution.

245.   As a direct and proximate result of the Defendants failure to properly supervise their corrections officers, the plaintiff class members have been seriously injured in that they have been subjected to the sadistic use of force, deprived meals, and deprived medical treatment.

WHEREFORE, for the foregoing reasons plaintiff prays for judgment in his favor and against Brinson, Howard, Jeffries, Baker, Woods, Bryson, Roth, Stubblefield, Glass, and/or the City of St. Louis in the form of:

A.   An order certifying a class of inmates who have either (i) been coerced by City of St. Louis corrections officers into sadistically inflicting harm upon another inmate or (ii) been sadistically victimized by inmates under the orders of any City of St. Louis corrections official, and appointing plaintiffs' counsel as class counsel;

B.  A declaration that a City of St. Louis inmate may not "consent" to a corrections officer's order to sadistically inflict harm upon any other inmate;

C.  An Order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from using prisoners to inflict sadistic force upon any inmate or prisoner;

D.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from turning a blind eye to the imminent threat of the infliction of sadistic force upon any inmate by any officer or inmate;

E.  An order preliminarily and permanently enjoining the City of St. Louis, its corrections officers and agents from depriving any inmate of medical attention following the infliction of sadistic force upon any inmate by any officer or other inmate;

F.  Compensatory damages;

G.  Exemplary damages in excess of $150,000;

H.  Reasonable attorney's fees and costs; and

I.  Any other relief this Court deems necessary and appropriate.

Respectfully Submitted


/s/ Paul E. Sims_____
Freeman R. Bosley, Jr. #29341MO
Daniel R. Brown #59749MO
Ryan M. Smith #59928MO
Paul E. Sims #50536MO
Attorneys for the Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies a copy of the foregoing was electronically filed with the Court

for service by means of Notice of Electronic filing on this _10th__ day of __October_____, 2013,

upon:

Mr. J. Brent Dulle
City Counselor's Office
1200 Market, City Hall, Room 314
St. Louis, MO 63103